EDWARDO CASA v. THE STATE.

No. 17123. Delivered January 30, 1935.
Reported in 78 S. W. (2d) 962.

The opinion states the case.

*Manuel Diez de Leon, of Houston,* for appellant.
*K. C. Barkley,* Crim. Dist. Atty., *Earl Adams, Jr.,* and *Chas.*

608

*E. Kamp*, Asst. Crim. Dist. Attys., all of Houston, and *Lloyd W. Davidson*, State's Atty., of Austin, for the State.

MORROW, PRESIDING JUDGE.—The offense is burglary of a private residence at night; penalty assessed at confinement in the penitentiary for forty years.

The former appeal, which resulted in a reversal of the conviction, is reported in 67 S. W. (2d) 288.

The count of the indictment upon which the conviction is founded is that charging burglary with intent to rape.

The evidence is sufficient to show that the dwelling of J. W. Schlief was, by force and breaking, entered at night; that the entry was into the room occupied by the daughter of Schlief, who was twenty-four years of age. About two or two-thirty in the morning, Violet Schlief was awakened by a disturbance or noise in her room. Upon turning on the light she observed a person near her bed. He was stooped below the foot of her bed. She turned off the light and immediately turned it on again and saw a man standing by and facing her. She was told to turn the light off otherwise she would be killed. She became paralyzed with fear when told to turn the light off and turned it off. She was so frightened that she could not make a noise. The man approached and attempted to put his hands on her face and neck. She fought him and was told to keep quiet. The struggle between them continued for some time. She felt something hard in his hand which she thought was a weapon. Finally, during the tussel, her voice returned and she screamed very loud. He started around to the foot of the bed. She screamed again and he turned and went out through the window. After his departure she noticed the condition of the window, which was torn and the hook was loose. The screen was slit about five inches. The middle of the screen was badly dented and torn loose from the side. The man went out of the window so swiftly as to indicate that the opening had already been prepared. The condition of the window, after it was examined, verified that view. The appellant's entry into the room was without the consent of the prosecuting witness. She had never seen him before. In the encounter his face came near to the girl and she smelled the odor of garlic upon his breath. The odor was very strong. During the same night, appellant was brought by officers to the Schlief home. The girl saw him and recognized him as the intruder, both by his appearance and by the odor of garlic. The girl said she screamed because she was being assailed. She did not know the purpose of the

appellant in entering her room, but feared that she was the subject of a criminal attack.

While searching for the appellant the officers discovered an automobile which had become "stranded" with no one in it. Later, without disclosing their presence, they found the appellant in the automobile. His condition, as described by them, was such as justified the conclusion that his statement that he was sleeping in the automobile was not true. The officers also testified to footprints near the Schlief home which fitted the peculiar tennis shoes which appellant was wearing when arrested

Appellant testified in his own behalf to the effect that his car became disabled. Having no patch with which to repair a tire he laid down in a vacant lot and waited until morning. Becoming chilled he got into the car. The condition of the car described by the appellant was controverted by the testimony of the officers who arrested him.

According to Bill of Exception No. 1, the prosecutrix was asked by State's counsel if she recognized the appellant when he was brought to her home by the police officers after the occurrence. She answered that she did recognize him but did not audibly declare it in his presence. Upon motion by appellant's counsel the testimony was withdrawn. According to the bill, as qualified, the court states that after this evidence was withdrawn from the consideration of the jury, the defendant proved it by the same witness on cross-examination.

In Bill No. 2 it appears that State's counsel propounded to the prosecutrix a long leading question with reference to her identifying the appellant as the man who entered her room as she described in her original testimony, the question concluding with the following words: "* * * was that the same man who came in your house that night and came to your bed and attempted to rape you?"

This inquiry was made and the question answered in the affirmative before noon. Immediately after the reassembling of the jury it was withdrawn by the court and the jury instructed to disregard it.

Bill No. 3 is to the effect that in reply to a question by State's counsel the prosecutrix said: "The reason I said to the police officers at the time they brought the defendant that I didn't know whether this was the man or not, was because the police had told me not to say anything while he was there, and I followed the instructions given me by the police officers. I shortly thereafter made positive indentifi-

cation of this man as being the man who came into my room that night and left through the window. When I did that, the defendant was going out to the police officer's car; that was just a moment after he had left my door."

In qualifying the bill the court states that the evidence shows that when appellant was in the presence of the prosecutrix on the porch on the night upon which the offense is charged to have been committed, the gallery was lighted with an electric porch light. The witness did not then say that appellant was the man who entered her house. Appellant also proved that when the prosecutrix testified at the examining trial in the Justice Court while appellant was present, she did not say that he was the man who entered her room. She did not say "No" and she did not say "Yes." She merely stated that she did not know whether appellant was the man who entered her room or not. Upon redirect examination she explained her testimony elicited by the appellant and stated the reason for testifying as she did upon her cross-examination at the examining trial.

Bill No. 4 reveals that Police Officer Williams testified that when appellant was brought to the home of the prosecutrix, he told her to look him over and see if she could identify him, but not to make any identification in his presence. The officer said he gave her this instruction because it was the custom of the Police Department. The officer further stated that after appellant was taken back to the automobile in which he had been brought to the home of the prosecutrix, she said to the witness that appellant was the man who entered the bed room that night. Objection was urged to this statement of the officer upon the ground that it was hearsay. In approving the bill the court expressed the opinion that the evidence mentioned was admissable as an explanation of the conduct of the prosecutrix which had been introduced in evidence by the appellant tending to show why she did not audibly identify appellant in his presence as the offender. See Jones v. State, 67 S. W. (2d) 279; Jackson v. State, 103 Texas Crim. Rep., 252. It is thought that the ruling of the court in receiving the testimony in question is supported by the provision of article 728, C. C. P., which reads as follows: "When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence."

As understood, the evidence, if believed by the jury, was

sufficient to inculpate the appellant and that in dealing with the conflicting theories of the State and the appellant touching the identity of the appellant as the offender, the rules of procedure were not transgressed.

Upon the record before us, we are constrained to order an affirmance of the judgment. It is so ordered.

*Affirmed.*